UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HINERWADEL'S INC,

          Plaintiff,

   v.                                    Civil Action No.:

ISADORE A. RAPASADI & SONS, INC.,
SAMUEL S. RAPASADI and
GENERAL BAG CORPORATION,

          Defendants.
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Hinerwadel's Inc., for its Complaint against Defendants Isadore A. Rapasadi & Sons, Inc. ("Rapasadi Inc."), Samuel S. Rapasadi ("Mr. Rapasadi"), and General Bag Corporation ("General Bag"), alleges as follows:

### PARTIES

1. Plaintiff Hinerwadel's Inc. is a corporation formed under the laws of the state of New York and has its principal place of business at 5300 West Taft Road, North Syracuse, NY 13212.

2. Upon information and belief, Defendant Isadore A. Rapasadi & Sons, Inc. ("Rapasadi Inc.") is a corporation formed under the laws of the State of New York and has its principal place of business at 400 North Peterboro Street, Canastota, NY 13032.

3. Upon information and belief, Defendant Samuel S. Rapasadi ("Mr. Rapasadi") is a corporate officer of Rapasadi Inc. and resides at 334 Nelson Road, Canastota, NY 13032.

4.  Upon information and belief, Defendant General Bag Corporation ("General Bag") is a corporation formed under the laws of the State of Ohio and has its principal place of business at 3368 West 137th Street, Cleveland, OH 44111. Upon information and belief, General Bag is authorized to do business in New York State and maintains an Office at which it transacts business at 96 Wilcox Street, Cohocton, New York.

## JURISDICTION

5.  This is an action for federal trademark infringement under 15 U.S.C. § 1114(1) (Section 32(1) of the Lanham Act); unfair competition, false designations of origin, false representations, and false advertising under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act); federal trademark dilution in violation of 15 U.S.C. § 1125(c) (Federal Trademark Dilution Act); use of a trade name with intent to deceive under New York G.B.L. § 133; dilution of a trademark and injury to business reputation under New York G.B.L. § 360-l; and trademark infringement and unfair competition under the common law of the State of New York.

6.  This Court has original subject matter jurisdiction pursuant to 15 U.S.C. § 1121, 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a) and (b). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

7.  This Court has personal jurisdiction over Rapasadi, Inc. and Mr. Rapasadi under CPLR § 301 based on each being domiciled in and transacting, doing, and soliciting business in this District. This Court has personal jurisdiction over Defendant General Bag under CPLR §§ 301 & 302(a) based on General Bag's transacting, doing, and soliciting business in the State of New York and in this District. Upon information and belief, General Bag has contracted to provide goods in this District, including without limitation, bags imprinted with Plaintiff's registered trademark without authorization from Plaintiff.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) since a substantial part of the events giving rise to the claims occurred in this district. Venue is also proper under 28 U.S.C. § 1391(c) since all Defendants are subject to personal jurisdiction in this District.

## HINERWADEL SALT POTATOES

9. In 1914, John Hinerwadel Sr. founded Hinerwadel's Grove in North Syracuse, NY, serving fine foods, including hosting clambakes, for residents of and visitors to the Central New York region.

10. Today, Hinerwadel's Grove is under its fourth generation of ownership and management by the Hinerwadel family, and continues to host clambakes for residents of and visitors to the Central New York region.

11. One of the specialty items served at Hinerwadel's Grove since its inception has been salt potatoes, i.e., small, new potatoes prepared in boiling water to which salt has been added.

12. Hinerwadel's Grove has become famous in and around the Central New York region for, among other things, its salt potatoes.

13. In the 1960's, Hinerwadel's Grove began packing by hand and selling packages of its salt potatoes, including four and one-quarter pounds of small, new potatoes with a 12 ounce packet of salt in the package.

14. Since that time, packages of Hinerwadel's salt potatoes have become extremely popular among consumers in and around the Central New York region.

15. Plaintiff continues to pack its own packages of Hinerwadel's salt potatoes, now using an automated system because of the increased demand for its product.

16. Plaintiff is the leading producer and seller in the salt potato market in and around the Central New York region, selling close to one million bags annually and accounting for substantially more than fifty percent of all sales of salt potatoes.

## THE FAMOUS HINERWADEL'S TRADEMARK

17. On October 14, 1980, Plaintiff filed with the United States Patent and Trademark Office ("USPTO") an application for a trademark for the HINERWADEL'S mark with respect to fresh new potatoes.

18. On April 6, 1982, Plaintiff registered the HINERWADEL'S mark (U.S. Reg. No. 1,193,451) on the Supplemental Register of the United States Patent and Trademark Office and has maintained it continuously since, as the registration remains in full force and effect. A copy of the registration for the HINERWADEL'S mark is attached hereto as **Exhibit A**.

19. Plaintiff owns all rights, title and interest in the HINERWADEL'S mark.

20. Plaintiff has spent substantial time, effort, and money promoting the HINERWADEL'S mark and the quality of the salt potato product associated with the mark in and around the Central New York region.

21. Plaintiff has included the HINERWADEL'S mark on all packaging for its salt potatoes for several decades.

22. Plaintiff's packages of salt potatoes ("Hinerwadel Packages") are sold in interstate commerce to and by several retail stores in and around the Central New York region, including several northeastern states.

23. The HINERWADEL'S mark is inherently distinctive.

24. Consumers of salt potatoes in and around the Central New York region recognize the HINERWADEL'S mark as being associated with high quality salt potatoes packaged and sold by Plaintiff.

25. Upon information and belief, neither the HINERWADEL'S mark nor any similar mark has been or is used with authorization by any third party in any market, including the salt potato market.

26. The HINERWADEL'S mark is a famous mark.

27. The HINERWADEL's mark has acquired secondary meaning.

HISTORY BETWEEN PLAINTIFF AND GENERAL BAG

28. For approximately the last twenty-five years, Plaintiff has purchased bags for its salt potato packages from third party Northeast Packaging Co. ("Northeast"), located in Presque Isle, ME.

29. The bags provided by Northeast ("Northeast Hinerwadel Bags") to Plaintiff include the HINERWADEL'S mark and the statement "Packed by Hinerwadel's, North Syracuse, NY 13212."

30. The Northeast Hinerwadel Bags are provided to Plaintiff on pallets typically containing approximately eleven thousand bags.

31. For a period of several years until July 2005, Plaintiff also purchased bags for its Hinerwadel Packages from Defendant General Bag.

32. The bags provided by General Bag ("General Hinerwadel Bags") to Plaintiff include the HINERWADEL'S mark and the statement "Packed by Hinerwadel's, North Syracuse, NY 13212."

33. The General Hinerwadel Bags are provided to Plaintiff on pallets typically containing approximately six thousand bags.

34. The design of the General Hinerwadel Bags was created based on a sample of the Northeast Hinerwadel Bag.

35. The General Hinerwadel Bags and the Northeast Hinerwadel Bag are almost identical in appearance, especially as viewed by a consumer.

36. There are minor differences between the General Hinerwadel Bag and the Northeast Hinerwadel Bag, including the size and thickness of type font, the size of images, including a nutritional table, and the inclusion of a recycling symbol on the General Hinerwadel Bags.

37. After experiencing several problems with the quality of the General Hinerwadel Bags, Plaintiff discontinued purchasing bags for its salt potatoes from General Bag in or around July 2005.

38. Plaintiff has never authorized either Northeast or General Bag to sell bags bearing the HINERWADEL'S mark to any third party.

## HISTORY BETWEEN PLAINTIFF AND RAPASADI INC.

39. For a period of several years until recently, Defendant Rapasadi Inc. was an authorized distributor of Plaintiff's Hinerwadel Packages to various customers.

40. During that time, Rapasadi Inc. would order Hinerwadel Packages packed ten to a box by Plaintiff, pick up the Hinerwadel Packages from Plaintiff, and deliver them to customers.

## DEFENDANTS' COUNTERFEIT SALT POTATOES

41. Upon information and belief, in or about late 2004, without authorization from Plaintiff, General Bag began providing several pallets, each containing approximately six thousand General Hinerwadel Bags, to Rapasadi Inc. and Mr. Rapasadi (collectively "Rapasadi Defendants").

42. Upon information and belief, since that time, without authorization from Plaintiff, under the direction and with the knowledge of Mr. Rapasadi, Rapasadi Inc. has been packaging

and selling their own salt potatoes in General Hinerwadel Bags ("Counterfeit Rapasadi Packages").

43. Upon information and belief, under the direction and with the knowledge of Mr. Rapasadi, Rapasadi Inc. has recently hidden their supply of General Hinerwadel Bags at a remote location.

44. Upon information and belief, without authorization from Plaintiff, under the direction and with the knowledge of Mr. Rapasadi, Rapasadi Inc. has been selling their Counterfeit Rapasadi Packages to customers along with genuine Hinerwadel Packages.

45. Upon information and belief, without authorization from Plaintiff, under the direction and with the knowledge of Mr. Rapasadi, Rapasadi Inc. has been selling their Counterfeit Rapasadi Packages to customers without informing the customers that the Counterfeit Rapasadi Packages are not provided or packaged by Plaintiff.

46. Like the Hinerwadel Packages, the Counterfeit Rapasadi Packages include the HINERWADEL'S mark and the statement "Packed by Hinerwadel's, North Syracuse, NY 13212."

47. The Counterfeit Rapasadi Packages and Hinerwadel Packages are almost identical in appearance, especially as viewed by a consumer.

48. There are minor differences between the appearance of the Counterfeit Rapasadi Packages and Hinerwadel Packages, including the differences between the General Hinerwadel Bags and the Northeast Hinerwadel Bags, the material and dimensions of the packet of salt, the location of the packet of salt in the package, and the closure of the package.

49. The Counterfeit Rapasadi Packages are of a lower quality than the Hinerwadel Packages in several respects, including the use of larger, lower quality potatoes and the

undesirable presentation of the packages, which appear crushed and deformed from shipping in mesh bailers instead of boxes.

50.     In or around July 2005, Plaintiff received complaints regarding the quality of products that consumers believed to have been provided by Plaintiff, including the quality of the potatoes.

51.     Upon information and belief, the products complained of by consumers were Counterfeit Rapasadi Packages.

52.     Upon information and belief, Rapasadi Defendants are selling the lower quality Counterfeit Rapasadi Packages in bad faith with the intention of damaging the reputation and goodwill of Plaintiff and the HINERWADEL'S mark.

53.     In January 2006, Counterfeit Rapasadi Packages, using the General Hinerwadel Bags, were on sale and purchased at retail stores in this District, including New Hartford, NY and Oneida, NY.

54.     Potatoes have a shelf life of approximately 30 days depending on storage temperatures and other conditions.

55.     Defendants' unauthorized use of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of their Counterfeit Rapasadi Packages is likely to cause confusion and mistake and to deceive consumers, who believe they are purchasing salt potatoes packed by Plaintiff.

56.     Defendants' unauthorized use of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of their Counterfeit Rapasadi Packages has resulted in lost sales by Plaintiff.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT

57. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58. Defendants' foregoing acts constitute infringement of the HINERWADEL'S mark in violation of 15 U.S.C. § 1114(1) (Section 32 of the Lanham Act).

59. Defendants' unauthorized use in commerce of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is likely to cause confusion and mistake and to deceive consumers.

60. Defendants' unauthorized reproducing, counterfeiting, and copying of the HINERWADEL'S mark and application of those reproductions, counterfeits, and copies to packages intended to be used in commerce in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is likely to cause confusion and mistake and to deceive consumers.

61. Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly, with knowledge that such acts are intended to cause confusion, mistake, and deception.

62. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT II
## FEDERAL UNFAIR COMPETITION, FALSE DESIGNATIONS OF ORIGIN, FALSE REPRESENTATIONS, AND FALSE ADVERTISING

63. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 62 as if fully set forth herein.

64. Defendants' foregoing acts constitute unfair competition, false designations of origin, false representations, and false advertising in violation of 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act).

65. Defendants' unauthorized use in commerce of a reproduction, counterfeit, and copy of the HINERWADEL'S mark, false designations of origin, and false representations in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is likely to cause confusion and mistake and to deceive consumers as to the affiliation, connection, or association of Defendants with Plaintiff, and as to the origin, sponsorship, and approval of Counterfeit Rapasadi Packages by Plaintiff.

66. Upon information and belief, the foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly, with knowledge that such acts are intended to cause confusion, mistake, and deception.

67. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT III
## FEDERAL TRADEMARK DILUTION

68. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 67 as if fully set forth herein.

69. Defendants' foregoing acts constitute dilution of the HINERWADEL'S mark in violation of 15 U.S.C. § 1125(c) (Federal Trademark Dilution Act).

70. Defendants' unauthorized use in commerce of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is

likely to lessen the capacity of the HINERWADEL'S mark to identify and distinguish Plaintiff's salt potatoes, thereby blurring the unique identifier of Plaintiff's products.

71.     Defendants' unauthorized use in commerce of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages of a lower quality is likely to damage the reputation and goodwill of Plaintiff and the HINERWADEL'S mark, thereby tarnishing the reputation of Plaintiff and its products.

72.     Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly, intending to cause dilution of the HINERWADEL'S mark.

73.     Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT IV
## USE OF A TRADE NAME WITH INTENT TO DECEIVE

74.     Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 73 as if fully set forth herein.

75.     Defendants' foregoing acts constitute use of a trade name with intent to deceive in violation of New York G.B.L. § 133.

76.     Defendants' unauthorized adoption and use of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is likely to cause confusion and mistake and to deceive consumers as to the affiliation, connection, or association of Counterfeit Rapasadi Packages with Plaintiff.

77. Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly, intending to deceive and mislead the public.

78. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT V
## DILUTION OF A TRADEMARK AND INJURY TO BUSINESS REPUTATION

79. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 78 as if fully set forth herein.

80. Defendants' foregoing acts constitute dilution of a trademark and injury to business reputation in violation of New York G.B.L. § 360-l.

81. Defendants' unauthorized adoption and use of the HINERWADEL'S mark in connection with the sale, offering for sale, and distribution of Counterfeit Rapasadi Packages is likely to injure the business reputation of Plaintiff and to dilute the distinctive quality of the HINERWADEL'S mark.

82. Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly, intending to injure the business reputation of Plaintiff and to dilute the distinctive quality of the HINERWADEL'S mark.

83. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT VI
## COMMON LAW TRADEMARK INFRINGEMENT

84. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 83 as if fully set forth herein.

85. Defendants' foregoing acts constitute trademark infringement in violation of the common law of the State of New York.

86. Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, and wantonly.

87. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## COUNT VII
## COMMON LAW UNFAIR COMPETITION

88. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 87 as if fully set forth herein.

89. Defendants' foregoing acts constitute unfair competition in violation of the common law of the State of New York.

90. Upon information and belief, Defendants' foregoing acts have been and continue to be performed intentionally, knowingly, willfully, wantonly, and in bad faith.

91. Defendants' foregoing acts have caused, are causing, and, unless enjoined and restrained, will cause further irreparable injury and damage to Plaintiff that cannot be remedied by money damages alone, leaving Plaintiff with no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this Court:

A. Declare that Defendants' unauthorized conduct is federal trademark infringement under 15 U.S.C. § 1114(1) (Section 32(1) of the Lanham Act); unfair competition, false designations of origin, false representations, and false advertising under 15 U.S.C. § 1125(a) (Section 43(a) of the Lanham Act); federal trademark dilution in violation of 15 U.S.C. § 1125(c) (Federal Trademark Dilution Act); use of a trade name with intent to deceive under New York G.B.L. § 133; dilution of a trademark and injury to business reputation under New York G.B.L. § 360-l; and trademark infringement and unfair competition under the common law of the State of New York.

B. Preliminary and permanently enjoin and restrain Defendants, their officers, directors, agents, servants, employees, representatives, independent contractors, customers, attorneys, related companies, successors, assigns, and all others in active concert or participation with them or any of them from:

    (1) Infringing the HINERWADEL'S mark;

    (2) Diluting the HINERWADEL'S mark;

    (3) Unfairly competing with Plaintiff;

    (4) Using the HINERWADEL'S mark or any variation thereof in connection with promoting, marketing, advertising, selling, offering for sale, or distributing any products or services offered or provided by Plaintiff;

    (5) Representing by any means whatsoever, directly or indirectly, that any products or services offered or provided by Defendants are offered or provided by the Plaintiff; and

    (6) Performing any acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead consumers into the belief that products or services sold, offered for sale, distributed, or transmitted by Defendants are authorized, sponsored, licensed, endorsed, promoted, or condoned by Plaintiff, or are otherwise affiliated with or connected to Plaintiff.

C. Order that Defendants account to Plaintiff for Defendants' profits and any damages sustained by Plaintiff arising from the foregoing wrongful acts by Defendants.

D. Award Plaintiff actual and/or statutory damages for the foregoing wrongful acts by Defendants.

E.  Award Plaintiff exemplary and punitive damages for the foregoing willful and intentional wrongful acts by Defendants.

F.  Award Plaintiff its costs, including reasonable attorneys' fees and disbursements, in this action.

G.  Award Plaintiff such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff requests trial by jury on all issues so triable.

Dated: January 27, 2006

WALL MARJAMA & BILINSKI LLP

By: _____
James R. Muldoon (Bar Roll No. 506772)
Denis Sullivan (Bar Roll No. 512997)
101 South Salina Street, Suite 400
Syracuse, New York  13202
Telephone:  (315) 425-9000
Facsimile:   (315) 425-9114

*Attorneys for Plaintiff Hinerwadel's Inc.*